IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PETRILLE WIND P.C., | |
| Plaintiff, | |
| v. | CIVIL ACTION |
| LIBERTY INSURANCE UNDERWRITERS, INC., | NO. 14-06657 |
| Defendant. | |

MEMORANDUM

YOHN, J.                                                                                                         January 29, 2015

Petrille Wind P.C., a Bucks County, Pennsylvania law firm, held a policy with Liberty Insurance Underwriters, Inc. for professional liability insurance.  After a dispute over coverage, Petrille Wind filed suit in the Court of Common Pleas of Philadelphia County for breach of contract and bad faith in violation of 42 Pa. Cons. Stat. Ann. § 8371.  Liberty subsequently filed a notice of removal on the basis of diversity of citizenship.  But because the amount in controversy requirement set out in 28 U.S.C. § 1332 has not been satisfied here, this court lacks jurisdiction over the case.  Accordingly, I will remand this matter back to the state court.

## I.    Brief Background and Procedural History[1]

From November 14, 2009 to November 14, 2012, Petrille Wind P.C. contracted with Liberty Insurance Underwriters, Inc. for professional liability insurance.  Under the policy held by Petrille Wind, Liberty was obliged to defend claims of professional negligence against Petrille Wind, and Liberty was obligated to pay all damages caused by any alleged wrongful act in

---

[1] This account accepts as true all factual allegations made in the complaint (Doc. No. 1-1).  *See Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996).

excess of the policy's deductible and up to the policy's limits of liability.  In other words, the insurance policy contained both a duty to defend and a duty to indemnify.

From July 2008 to November 2010, Petrille Wind did various work on behalf of their client LLEM, Inc.  In November 2010, LLEM's principal shareholder Ralph Emproto expressed dissatisfaction with the speed and cost of Petrille Wind's services, and on December 10, 2010, Petrille Wind attorney Donald Petrille and Emproto discussed transferring LLEM's ongoing cases to successor counsel and resolving the balance of unpaid legal fees owed to Petrille Wind.  On January 7, 2011, Petrille formally proposed transferring LLEM's case file in coordination with LLEM's paying a reduced amount of its legal fees and with a mutual release of any claims.

On February 28, 2012, counsel for LLEM informed Liberty that LLEM intended to file a professional liability claim against Petrille Wind.  Liberty in turn conveyed this development to Petrille Wind on March 21, 2012.  On May 1, 2012, Liberty reported to Petrille Wind that it was denying coverage for either indemnification or defense of this professional liability lawsuit, asserting that Petrille Wind had not timely notified the insurer that the situation with LLEM could give rise to a potential claim.  On February 6, 2013, LLEM filed a writ of summons against Petrille Wind in the Philadelphia County Court of Common Pleas.  LLEM filed its complaint on October 10, 2013.  On May 30, 2014, the matter went to arbitration before a panel of the Court of Common Pleas, resulting in a $50,000 judgment against Petrille Wind.

On October 31, 2014, Petrille Wind filed a complaint against Liberty in the Philadelphia County Court of Common Pleas, claiming breach of contract and bad faith denial of coverage in violation of 42 Pa. Cons. Stat. Ann. § 8371 and seeking actual damages of $50,000, as well as punitive damages and attorney fees.  The complaint states that Petrille Wind would limit the sum of any award at an "amount not to exceed $74,999.99, which limitation on damages shall bind

2

Plaintiff, so that any decision or verdict in favor of Plaintiff, on Counts I or II of this Complaint, or a combination thereof, shall be the subject of molding and reduction to a figure close[s]t to the sum of $75,000, without reaching or exceeding that amount." Notice of Removal Ex. 1 at 19-20 (Compl. 9-10). On November 20, 2014, Liberty filed a notice of removal under 28 U.S.C. § 1441(b), arguing that diversity jurisdiction exists under 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy exceeds $75,000. On November 26, 2014, Liberty filed a motion to dismiss the complaint under Fed. R. Civ. P. 12(b)(6). On December 10, 2014, Petrille Wind filed an answer disputing removal to federal court but agreeing to "abide by whatever ruling the Court makes with respect to jurisdiction, if any." Br. Supp. Pl.'s Answer 4. Liberty filed a reply on December 17, 2014.

## II.   Discussion

"[T]he federal courts are without power to adjudicate the substantive claims in a lawsuit, absent a firm bedrock of jurisdiction. When the foundation of federal authority is, in a particular instance, open to question, it is incumbent upon the courts to resolve such doubts, one way or the other, before proceeding to a disposition of the merits." *Carlsberg Res. Corp. v. Cambria Sav. & Loan Ass'n*, 554 F.2d 1254, 1256 (3d Cir. 1977). Under 28 U.S.C. § 1332(a), federal courts have original jurisdiction over a case where the parties are citizens of different states and where "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." It is undisputed that Petrille Wind is a Pennsylvania corporation with its principal place of business in Pennsylvania and that Liberty is an Illinois corporation with its principal place of business in Massachusetts. *See* Notice of Removal 3. But Petrille Wind states in its complaint and reasserts in its answer that it seeks to cap the amount it can receive from this lawsuit at $74,999.99 in total. *See* Notice of Removal Ex. 1 at 19-20 (Compl. 9-10); Br. Supp. Pl.'s Answer 3-4. Liberty

responds that Petrille Wind seeks $50,000 in compensatory damages for the arbitration award, punitive damages under 42 Pa. Cons. Stat. Ann. § 8371, and attorney fees, which in the aggregate constitute the amount in controversy, and which "clear[ly] to a legal certainty" exceed $75,000 exclusive of interest and costs.  *See* Notice of Removal 6.  Because this disagreement over the amount in controversy leaves the court's jurisdiction open to question, I must resolve it before potentially turning to the merits of the case.  *Carlsberg*, 554 F.2d at 1256.

      Petrille Wind cites no caselaw for the proposition that a plaintiff can control the amount in controversy of a lawsuit by pledging to limit the total award that it could receive.  Liberty, by contrast, cites several cases from the Third Circuit suggesting that a court should look beyond plaintiff's pleadings because "the defendant has a right to resort to a federal forum if it can establish that the jurisdictional requirements have been satisfied."  *Samuel-Bassett v. KIA Motors Am., Inc.*, 357 F.3d 392, 398 (3d Cir. 2004) (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 294 (1938)).  Indeed, in 2006, the Third Circuit held that "[e]ven if a plaintiff states that her claims fall below the threshold, this Court must look to see if the plaintiff's actual monetary demands in the aggregate exceed the threshold, irrespective of whether the plaintiff states that the demands do not."  *Morgan v. Gay*, 471 F.3d 469, 474-75 (3d Cir. 2006).  Moreover, Liberty correctly points out that under the Federal Courts Jurisdiction and Venue Clarification Act of 2011, removal is proper where the district court finds by a mere preponderance of the evidence that the amount in controversy exceeds the jurisdictional minimum.  Pub. L. No. 112-63, 125 Stat. 758, 760 (2011).

      Liberty further notes that "[i]n diversity cases courts must look to state law to determine the nature and extent of the right to be enforced."  *Samuel-Bassett*, 357 F.3d at 398 (citing *Horton v. Liberty Mut. Ins. Co.*, 367 U.S. 348, 352-53 (1961)).  Thus, Liberty argues that in a

4

diversity case, punitive damages and attorney fees can be counted as part of the total amount in controversy where they are available as a matter of state substantive law. *See Golden ex rel. Golden v. Golden*, 382 F.3d 348, 355 (3d Cir. 2004) ("Claims for punitive damages may be aggregated with claims for compensatory damages unless the former are patently frivolous and without foundation. Punitive damage claims are *per se* patently frivolous and without foundation if they are unavailable as a matter of state substantive law.") (citations and internal quotation marks omitted), *abrogated on other grounds by Marshall v. Marshall*, 547 U.S. 293 (2006); *Suber v. Chrysler Corp.*, 104 F.3d 578, 585 (3d Cir. 1997), *as amended* (Feb. 18, 1997) ("[A]ttorney's fees are necessarily part of the amount in controversy if such fees are available to successful plaintiffs under the statutory cause of action."). Here, punitive damages and attorney fees are available by Pennsylvania's bad faith statute, 42 Pa. Cons. Stat. Ann. § 8371. Thus, Liberty argues that the total amount in controversy—$50,000 in compensatory damages, plus punitive damages and attorney fees—exceeds the jurisdictional threshold of $75,000 "to a legal certainty (and thus, certainly by a preponderance of the evidence)." Notice of Removal 6.

None of the cases cited by Liberty, however, were decided after the Supreme Court handed down its opinion in *Standard Fire Insurance Co. v. Knowles*, 133 S. Ct. 1345 (2013). Though that case dealt with the jurisdictional threshold for class action lawsuits, the Court confirmed that "federal courts permit individual plaintiffs, who are the masters of their complaints, to avoid removal to federal court, and to obtain a remand to state court, by stipulating to amounts at issue that fall below the federal jurisdictional requirement." *Id.* at 1350.[2] On that point, the Supreme Court cited its earlier opinion in *St. Paul Mercury*

---

[2] To the extent this statement is dicta, "we should not idly ignore considered statements the Supreme Court makes in dicta. The Supreme Court uses dicta to help control and influence the many issues it cannot decide because of its limited docket. 'Appellate courts that dismiss these expressions [in dicta] and strike off on their own increase the disparity among tribunals (for other judges are likely to follow the Supreme Court's marching orders) and frustrate

*Indemnity*—which the Third Circuit relied on in *Samuel-Bassett*—for the proposition that where a plaintiff "does not desire to try his case in the federal court he may resort to the expedient of suing for less than the jurisdictional amount, and though he would be justly entitled to more, the defendant cannot remove." *Id.* (quoting *St. Paul Mercury Indemnity*, 303 U.S. at 294). Moreover, the Third Circuit has addressed the concern over possible gamesmanship in such a situation, noting "the potential availability of judicial estoppel arguments by the defendants should the plaintiffs in the future change legal positions in an attempt to achieve an award in excess of [the jurisdictional amount]." *Morgan*, 471 F.3d at 477 n.9.

In sum, Third Circuit jurisprudence and the federal removal statute itself encourage a district court not simply to take plaintiff's word for it when calculating an amount in controversy. But the Supreme Court suggests that an individual plaintiff can make a binding statement to fix the amount in controversy below the jurisdictional threshold, and the Third Circuit has advised that such a plaintiff can be held to that self-imposed limit by way of the court's equitable powers.

It is axiomatic that "[p]laintiffs are masters of their complaints." *Webster v. Reprod. Health Servs.*, 492 U.S. 490, 512 (1989). In that spirit, and in deference to the Supreme Court's holding in *Standard Fire*, I find that the amount in controversy here falls below the jurisdictional limit of $75,000. As a result, this case does not satisfy the requirements for federal diversity jurisdiction under 28 U.S.C. § 1332, and so it must be remanded. An appropriate order follows.

---

the evenhanded administration of justice by giving litigants an outcome other than the one the Supreme Court would be likely to reach were the case heard there.'" *In re McDonald*, 205 F.3d 606, 612-13 (3d Cir. 2000) (quoting *United States v. Bloom*, 149 F.3d 649, 653 (7th Cir. 1998)).